## Gibson License

*Joseph Gale,* for Commonwealth.

*Robert J. Gillespie,* for appellant.

PINOLA, P. J., September 3, 1964.—This is an appeal by Richard E. Gibson of the City of Hazleton from a suspension of his operator's license for a period of two months for alleged speeding.

The case was heard de novo. On the basis of the testimony adduced, we make the following

## FINDINGS OF FACT

1. On August 27, 1963, appellant was operating an Econoline Ford truck in a northerly direction on highway 81 in New Milford Township, one mile south of the New Milford exit, at about 7:40 a.m. (EST).

2. The road is a four-lane concrete highway with a medial divider. The highway has a slight downgrade for two and one-half miles. The traffic was light and the weather was clear and dry.

3. Appellant was arrested for operating the truck at the rate of 73 miles per hour in a zone posted with a maximum of 60 miles per hour for passenger cars and 50 miles per hour for trucks. There is no evidence as to the interval between the posted signs.

4. The speed of the truck was obtained by the use of radar equipment which had been properly inspected.

5. There was a "radar enforced" sign located two miles south of the point of the alleged violation, another two and one-half miles south of the first sign, and a third two and three-fourths miles north of that point.

6. He paid a fine and costs.

## DISCUSSION

Appellant is engaged in the sale of shoes and drives between 52 and 53,000 miles per year. He said he had gone over the hill at 50 miles per hour, that his truck picked up some speed down hill, that he did not look at the speedometer and did not realize how fast he was going, although he felt that he did not exceed 63 miles. If his license is suspended for two months, he will lose his job and his wife and child will suffer with him.

While we cannot help him because of his economical situation alone, the sign posting was improper.

Highway 81 is a limited access highway and under The Vehicle Code, sec. 1002(9), the Secretary of Highways could fix the speed limit at 60 miles per hour for passenger cars and 50 miles per hour for trucks. In

such case the official signs must be placed not less than one-eighth of a mile apart, on the right hand side of the highway facing the traffic to be controlled. Here we have no evidence whatsoever that the secretary did fix the limits, nor do we have evidence of any established interval between the signs.

As for the radar signs, the Secretary of Highways is authorized to establish by rule and regulation the type of sign and "to designate the intervals at which such warning signs are erected."

We have no evidence of any rule or regulation prescribed by the Secretary of Highways and none as to the compliance with any designated interval of the radar signs. It is true that there were three signs in the space of seven miles, and that Sergeant Clarence Walenta when asked whether the highway was posted in accordance with the requirements, replied: "It is posted properly, yes." This is a mere conclusion.

While there were three signs within the distance of seven miles, since we do not know what the requirements are, we cannot decide whether the signs were legally placed.

We cannot take judicial notice that the warning signs were placed by the proper authority and at the required intervals: Commonwealth v. Brose, 412 Pa. 276. Therefore, we conclude that the highway was not posted in conformity with the law as to speed signs or as to radar signs.

Accordingly, we reach the following

#### CONCLUSION

The violation committed by appellant does not call for a suspension of his operator's license.

We, therefore, enter the following

#### ORDER

Now, September 3, 1964, 2 p.m. (EDT), appellant is not subject to a suspension of his operator's license.